51 F.3d 297
 Fed. Carr. Cas. P 83,981, 311 U.S.App.D.C. 154
 NATIONAL MOTOR FREIGHT TRAFFIC ASSOCIATION, and National
Classification Committee, Petitioners,
v.
INTERSTATE COMMERCE COMMISSION, and the United States of
America, Respondents,
Mallinckrodt Specialty Chemicals Company, et al., National
Small Shipments Traffic Conference, Inc., Health and
Personal Care Distribution Conference, Inc., and National
Industrial Transportation League, Intervenors.
 No. 94-1032.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 22, 1995.
Decided April 11, 1995.
 
 John R. Bagileo, argued the cause, for petitioners. With him on the briefs, was William W. Pugh.
 Craig M. Keats, Associate Gen. Counsel, I.C.C., argued the cause, for respondents. With him on the brief were Henri F. Rush, Gen. Counsel, ICC, Anne K. Bingaman, Asst. Atty. Gen., John P. Fonte, and Robert B. Nicholson, Attys., U.S. Dept. of Justice. Judith A. Albert, Atty., I.C.C., entered an appearance.
 On the joint brief of intervenors, were Daniel J. Sweeney for Mallinckrodt Specialty Chemicals Co., et al., Nicholas J. DiMichael, Richard D. Fortin, and Michael Kane, for National Indus. Transp. League.
 Before EDWARDS, Chief Judge, GINSBURG and HENDERSON, Circuit Judges.
 GINSBURG, Circuit Judge:
 
 
 1
 The National Motor Freight Traffic Association, Inc. and the National Classification Committee of the NMFTA petition for review of two orders of the Interstate Commerce Commission cancelling the petitioners' proposed "class rate" tariff. Because the ICC used a standard that is insupportable in light of other decisions it has made, we grant the petition for review and remand the matter to the Commission.
 
 I. Background
 
 2
 A motor carrier subject to the jurisdiction of the ICC is required to establish and file with the Commission a tariff showing the rates it will charge for transportation. 49 U.S.C. Secs. 10702, 10761, 10762. Rather than file an individual tariff for every transported commodity, carriers often use a so-called class rate tariff, which sets forth the rate for transportation of a commodity based upon its "classification rating."
 
 
 3
 A classification rating is a number between 50 and 500 that is meant to reflect the "transportability" of a commodity. In general, the higher the number, the more difficult--and hence more expensive--it is to transport the commodity. The Commission evaluates the classification rating of a particular commodity upon the basis of four factors: (1) density, expressed as weight per cubic foot; (2) stowability, that is, the ease of loading and unloading; (3) handling, including any special care that must be used or conditions that must be maintained; and (4) liability, the potential for damage to, or damage caused by, the commodity.
 
 
 4
 The classification rating of a commodity is published in a "classification tariff." While any carrier may file one, the most widely used classification tariff is the National Motor Freight Classification Tariff (NMFCT), which the petitioners publish pursuant a "rate bureau agreement." See 49 U.S.C. Sec. 10706(b)(2) (exempting such collective rate setting from antitrust laws).
 
 
 5
 The Commission, upon its own initiative or upon "application of an interested party," may investigate the lawfulness of a newly filed classification tariff. 49 U.S.C. Sec. 10708. In such a proceeding, "the burden is on the carrier proposing the changed ... classification ... to prove the change is reasonable," as required by 49 U.S.C. Sec. 10701(a). 49 U.S.C. Sec. 10708(c).
 
 
 6
 The NMFCT long provided a classification rating of 200 for substances that were designated "Class A Poisons" by the Department of Transportation, including various poisonous gases, gas mixtures, and liquids, and a rating of 150 for poisonous gases and gas mixtures "other than Class A Poisons" (including the DOT's "Class B Poisons" and "Irritating Materials"). In 1985, however, the DOT adopted a new nomenclature for poisonous materials; it began by designating 36 chemicals "poison-inhalation hazards" (PIHs). See DOT Docket No. HM-196, Packaging and Placarding Requirements for Liquids Toxic by Inhalation, 50 Fed.Reg. 41092 (1985). In 1991 the DOT scrapped the old typology altogether and deemed PIHs more than 100 additional chemicals, many of which were not listed poisons under the old scheme. See DOT Docket No. HM-181, Performance Oriented Packaging Standards; Changes to Classification, Hazard Communication, Packaging and Handling Requirements Based on UN Standards and Agency Initiative, 55 Fed.Reg. 52402 (Dec. 21, 1990), as amended, 56 Fed.Reg. 47158 (Sept. 18, 1991) (hereinafter HM-181). The DOT also categorized the PIHs into four "hazard zones" labelled, in descending order of toxicity, A through D.
 
 
 7
 Because the DOT's new system eliminated the old designations incorporated into the NMFCT, all poisons could now be classified in the NMFCT only as "other than Class A poisons." The petitioners therefore proposed a new classification tariff in which all PIHs in hazard zones A or B would have a classification rating of 200, while all PIHs in hazard zones C or D would have a classification rating of 150. While this change corrected some of the problems caused by the new DOT nomenclature--the classification rating of 11 commodities would be lowered from 200 to 150, that of eight raised from 150 to 200--it did not simply restore the status quo ante because many of the materials that the DOT had designated PIHs in HM-181 had not previously been classified as either Class A or Class B poisons or as Irritating Materials. Thus, under the proposed tariff, the classification rating of 96 commodities newly designated PIHs would significantly increase, as would the rate for shipping those commodities.
 
 
 8
 Several shippers (intervenors here) protested the tariff, causing it to be suspended and forcing the ICC to determine whether the proposed changes are "reasonable." See 49 U.S.C. Sec. 10701(a). The Commission, first in an unpublished preliminary decision (issued August 27, 1993), and finally in Classification Ratings on Poisons, NMFC, 9 I.C.C.2d, Dkt. No. M-30430 (Nov. 18, 1993), concluded that the tariff was not reasonable because the proponents (petitioners here) failed to show a "substantial change in the transportation factors ... of the ... commodities involved." Commissioner Walden dissented on the ground that the proponents did not need to show a "substantial change" in the transportation factors for the proposed classifications to be "reasonable" under the statute.
 
 
 9
 Recurring to the four factors relevant to overall transportability, the Commission found first that the petitioners had not shown that HM-181 had any adverse effect upon the "relatively high" density of the newly designated PIHs. Likewise, the Commission found no evidence of "a substantial change in [stowability] since HM-181 became effective," and faulted the petitioners for failing to present "sufficient data to show how handling under HM-181 requirements is substantially different from [what it was under] the prior regulations." As for liability, the Commission suggested that by imposing more stringent safety standards upon the transport of PIHs, the new DOT regulations actually decreased the potential for detrimental loss or harm.
 
 
 10
 The petitioners now argue that the Commission's requirement that they show a "substantial change" in the transportation characteristics of a commodity in order to justify its reclassification is a "new, unexplained test." The Commission's established practice, they say, has been to approve changes to classification ratings if the proposed ratings are similar to those for commodities with similar transportation characteristics. We agree, and we hold that the ICC cannot require the petitioners to show a "substantial change" in order to demonstrate that a proposed reclassification is reasonable so long as it allows other parties to justify reclassifications simply on the ground that they are similar to those established for other commodities with similar characteristics.
 
 II. Analysis
 
 11
 The ICC has long allowed a carrier to show that a proposed classification rating is reasonable by comparing it to the ratings of other commodities with similar transportation characteristics. Indeed, the Commission has expressly acknowledged this standard, both prior to its decision in this case, see Motor Classification Ratings on Candy or Confectionery, 353 I.C.C. 314, 329 (1977) ("A long-recognized test of the reasonableness of a classification rating is the relationship that a commodity bears to the ratings applied on commodities having similar transportation characteristics"), and since, see Classification Ratings on Intermediate Bulk Containers, National Motor Freight Classification, Dkt. No. M-30436 (August 30, 1994) (not printed) ("It is well-settled ... that comparisons of diverse commodities having similar transportation characteristics is an acceptable method of demonstrating the reasonableness of a proposed classification").
 
 
 12
 The Commission has offered no explanation, either in its decision or in its brief before this court, for uniquely requiring the petitioners to show a "substantial change" in the transportation factors of the PIHs before they can be reclassified. In its preliminary decision, the Commission cited Investigation into Motor Carrier Classification, 367 I.C.C. 243 (1983), for the proposition that "the proponent of the reclassification must demonstrate a substantial change in the transportation factors." In that case, the Commission streamlined what had been a 15-factor inquiry and adopted the four transportation factors it still uses to evaluate a proposed reclassification; it said nothing, however, about how the factors are to be applied in a particular case, much less about requiring a showing that they have substantially changed.
 
 
 13
 In its brief, the Commission cites a 1969 case in which it approved a reclassification because it was "satisfied that there ha[d] been a change in the transportation characteristics and conditions ... since the establishment of the ratings." Classification Ratings, Paper or Plastic Drinking Straws, 335 I.C.C. 1, 4 (1969). This unremarkable statement indicates that a substantial change in transportability is a sufficient condition for a reclassification--it would be remarkable if that were not the case--but neither it nor any other decision to which the Commission points suggests that such a change is a necessary condition for a reclassification.
 
 
 14
 The only case we have found in which the Commission imposed a "substantial change" requirement is Classification Rating on Acids, NMFC, 8 I.C.C.2d 851 (1992), review denied on other grounds, National Classification Committee v. ICC, 22 F.3d 1174 (D.C.Cir.1994). In that case, as in this, the Commission provided neither authority nor reasoning for such a test. On review, we did not reach the issue, however, as we upheld the agency upon another ground. See NCC, 22 F.3d at 1176 n. 1.
 
 
 15
 We now hold that the ICC may not condition approval of a proposed reclassification upon the proponent showing a substantial change in the transportation factors while it deems other classification ratings "reasonable" simply because they are comparable to the ratings of commodities with similar characteristics. The circumstances of this case well illustrate the Commission's error.
 
 
 16
 The Commission's usual practice does not favor retaining rail-derived classifications where a comparison with similar goods yields a different result. See, e.g., Classification Rating, Boxes or Crates, Wood & Wire Combined, 335 I.C.C. 754, 757-58 (1970) ("Although the protestants state that the present ... rating ... is presumably just and reasonable because it has been in effect since 1936, we cannot overlook the fact that this rating was copied from the railroad classification and is not necessarily based upon circumstances peculiar to transportation by motor vehicle. Of greater significance are certain more recent motor carrier decisions [concerning similar materials]"). The ratings of some 79 of the commodities involved in this case have not been reexamined since they were adopted wholesale from preexisting railroad classifications when motor carrier rates were first regulated in 1936. The "substantial change" rule, however, would make it impossible for the petitioners to file new rates for any of the 79 commodities the transportability of which has not changed since 1936, even though the original classification was dictated by convenience rather than by considered judgment, and the proposed rate is reasonable when compared to rates for similar goods.
 
 
 17
 The Commission argues that requiring it to undertake different inquiries for rail-derived and non-rail-derived ratings would unduly burden its capacity to evaluate classification ratings. We express no view upon that claim, for we see no occasion for the ICC to use two different standards: the Commission's "substantial change" test is equally irrational as applied to the proposed ratings for non-rail-derived classifications. As long as the rating for any one commodity may be deemed reasonable by virtue of its relation to the rating of another commodity with similar transportation characteristics, any change in the rating of the latter commodity may change the rating for the former commodity, quite apart from any change in the transportation characteristics of the former commodity.
 
 
 18
 In the present case, for example, the ratings of many commodities were changed when the DOT first promulgated new rules in 1985. This and perhaps other factors--e.g., a greater appreciation for the hazards of some poisons--unreflected in the 1936 ratings, may have altered the surrounding landscape enough to call into question the classification ratings of all PIHs. Whether this has in fact occurred is an issue for the Commission to assess on remand; but it must be open to that possibility.
 
 III. Conclusion
 
 19
 We can conceive of no justification for requiring the petitioners to show a substantial change in the transportation factors for PIHs so long as the Commission elsewhere accepts comparisons with similar commodities as support for a classification. We therefore grant the petition for review, and remand the matter to the Commission so that it may apply an appropriate standard to determine whether the petitioners' proposed tariff is lawful.
 
 
 20
 So ordered.